**Jeffrey DOUGLAS, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 48A02–0701–CR–33.**

Court of Appeals of Indiana.

Dec. 28, 2007.

**876**

Bruce A. Stuard, Elwood, IN, Jason A. Childers, Hulse, Lacey, Hardacre, Austin & Shine, P.C., Anderson, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Zachary J. Stock, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant–Defendant Jeffrey Douglas ("Douglas") appeals his conviction and sentence of thirty months after pleading guilty to Failing to Register as a Sex Offender, a Class D felony.[1] We affirm the conviction and revise the sentence.

### Issues

Douglas raises four issues on appeal, of which we address two [2]:

I. Whether the sex offender registry statute is an *ex post facto* law as applied to Douglas; and

II. Whether his sentence is inappropriate.

### Facts and Procedural History[3]

On November 8, 2001, Douglas was released from prison after serving his sentence for three counts of sexual misconduct with a minor, as Class C felonies. Pursuant to the then-existing version of the sex offender statute, Douglas was required to register as a sex offender for the following ten years, which involved registering annually with the local law enforcement. If an offender moved, he was required to provide his new address to the authorities in the community where he last registered and register in his new community. Douglas did register with the Madison County Sheriff's Department on June 3, 2003, but failed to return the following summer for his annual registration. On May 27, 2004, the Madison County Sheriff's Department mailed a letter to Doug-

---

1. Ind.Code § 5–2–12–9 (recodified at Ind. Code § 11–8–8–17(a)).

2. Because we revise Douglas's sentence to the presumptive under our 7(B) analysis, we need not address his arguments that his enhanced sentence violates his federal Sixth Amendment rights as explained in *Blakely* or his similar rights under Sections 13 and 19 of the Indiana Constitution.

3. On October 3, 2007, we held oral argument in this matter at Sullivan High School in Sullivan, Indiana. We extend many thanks. First, we thank Appellant's and Appellee's counsel for traveling to Sullivan from Anderson and Indianapolis. We also commend counsel for the quality of their advocacy. We again extend our gratitude to the students, faculty, and staff of the Union (Dugger), North Central (Sullivan County) and Sullivan high schools, and the Sullivan County Bar Association for hosting this event.

las's reported address, reminding him to complete his annual registration. The letter was returned unopened and marked by the postal service as "return to sender moved left no forwarding address." Appendix at 65.

On June 23, 2004, the State charged Douglas with failing to register as a sex offender due to his failure to notify Madison County upon moving. On September 6, 2006, Douglas filed a motion to dismiss, arguing that the amendment to the sex offender registry statute in 2001 violated the federal and Indiana constitutional provisions prohibiting *ex post facto* laws by imposing additional punishments that were not in effect at the time of conviction. When Douglas was convicted for his sex offense in 1997, the existing version of the sex offender registry statute did not require individuals convicted of sexual misconduct with a minor, as a Class C felony, to register. *See* I.C. 5–2–12–4(1)(H) (Burns Supp. Ed.1997). However, the statute was modified in 2001 to include such individuals. *See* I.C. 5–2–12–4(a)(8) (Burns Ed.2001). The State filed its response to the motion on September 25, and that same day the trial court denied the same. On October 23, 2006, Douglas pled guilty to the charge without the benefit of a plea agreement. On November 20, 2006, the trial court sentenced Douglas to the Indiana Department of Correction for thirty months with fifteen months suspended to probation. Douglas now appeals.

### Discussion and Decision

#### I. Ex Post Facto

On appeal, Douglas first argues that the amendment to the sex offender registry statute is an *ex post facto* law as applied to

him because the statute did not apply to him when he was convicted for sexual misconduct with a minor. Before reaching this argument, we must first determine whether Douglas waived this argument for appeal by pleading guilty without the benefit of a plea agreement.

#### A. Waiver

■ On appeal, Douglas contends that he did not waive the issue of *ex post facto* by pleading guilty, because such a constitutional violation is fundamental error and this issue is not being raised for the first time on appeal. However, the cases to which Douglas cites to support this argument either involve a direct appeal from a trial rather than a guilty plea or are no longer good authority. *See Brown v. State,* 848 N.E.2d 699, 704 (Ind.Ct.App. 2006) *vacated on other grounds,* 868 N.E.2d 464 (Ind.2007); *Odom v. State,* 647 N.E.2d 377 (Ind.Ct.App.1995), *trans. denied.*[4]

The cases cited by the State concluding that most constitutional issues, including double jeopardy challenges, are waived when the defendant pleads guilty are founded upon the circumstance that the defendant's guilty plea was based upon a plea agreement from which he derived a benefit. *See Games v. State,* 743 N.E.2d 1132, 1135 (Ind.2001) ("Defendants who plead guilty to achieve favorable outcomes in the process of bargaining give up a plethora of substantive claims and procedural rights. Games has waived his claim of double jeopardy."); *Tumulty v. State,* 666 N.E.2d 394, 395 (Ind.1996); *Mapp v. State,* 770 N.E.2d 332, 335 (Ind.2002); *Mays v. State,* 790 N.E.2d 1019, 1022 (Ind. Ct.App.2003).

**4.** In *Mapp v. State,* our Supreme Court noted that the holding in *Odom v. State* "appears to reflect a misunderstanding of" *Menna v. N.Y.,* 423 U.S. 61, 62, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975), "which held that a defendant who has pled guilty to the charges which are facially duplicative of *previous* convictions is entitled to challenge the resulting convictions." *Mapp v. State,* 770 N.E.2d 332, 334 (Ind.2002) (emphasis in original).

In *Tumulty v. State,* our supreme court noted the multiple policy grounds for the judicial precedent that a defendant may not challenge his conviction based upon a guilty plea in a direct appeal. *Tumulty v. State,* 666 N.E.2d 394, 396 (Ind.1996). First, the plea concludes a dispute between parties, and to permit an appeal would make settlements difficult to achieve. *Id.* Second, to allow a direct appeal on the merits of the conviction after a guilty plea would dramatically multiply the caseload of the appellate courts. *Id.* Third, such claims often require a factual inquiry which appellate courts are not equipped to administer. *Id.*

Here, a plea agreement was not used. Without receiving a benefit such as a reduced sentence or the dismissal of other charges, Douglas pled guilty to the charged offense. Additionally, conducting a trial in this case would have been fruitless as Douglas did not contest the facts of his conduct but rather poses a question of law by challenging the constitutionality of the application of the sexual offender registry. Furthermore, the *ex post facto* issue had been raised prior to the entry of the guilty plea by way of Douglas's Motion to Dismiss. This resulted in fully briefed arguments from both parties as well as providing notice of the issue to the State and a record on which this Court can base its review. Finally, this is such a narrow set of circumstances that it would not open the floodgates of additional cases coming before this Court. Based on this unique set of facts, we conclude that Douglas did not waive the *ex post facto* issue.

### B. Ex Post Facto

Both the United States Constitution and the Indiana Constitution prohibit *ex post facto* laws. *See* U.S. Const. art. I, § 10; Ind. Const. art. I, § 24. The analysis for whether a statute violates these constitutional provisions is the same under the federal and state constitutions. *Goldsberry v. State,* 821 N.E.2d 447, 464 (Ind.Ct. App.2005). An *ex post facto* law is one that applies retroactively to disadvantage an offender's substantial rights. *Armstrong v. State,* 848 N.E.2d 1088, 1092 (Ind.2006), *cert. denied,* —— U.S. ——, 127 S.Ct. 513, 166 L.Ed.2d 370 (2006). Specifically, the clauses prohibit enacting a law that imposes a punishment for an act that was not punishable at the time it was committed; or imposes additional punishment to that then prescribed. *Goldsberry,* 821 N.E.2d at 464. The focus is not on whether the legislative change causes a disadvantage, but rather whether the change increases the penalty by which a crime is punishable or alters the definition of criminal conduct. *Id.* The principle of this prohibition is that persons have a right to fair warning of the conduct that will give rise to criminal penalties. *Armstrong,* 848 N.E.2d at 1093.

The sex offender registration statute was amended after Douglas was convicted of the triggering crime to include individuals who committed sexual misconduct with a minor, as a Class C felony. This amended version, Indiana Code Section 5-2-12-4 (Burns Ed.2001), was the version that the trial court used to require Douglas to register as a sex offender. Douglas thus contends the statute, as amended, was applied retroactively in his case. Douglas argues that the amendment to the sex offender registration statute, expanding its applicability, created an additional punishment to being convicted of the sex offense because the failure to register results in incarceration. The question that must be answered is whether the registration requirement and the attendant penalty for its violation is punishment that violates the *ex post facto* clauses.

The analysis utilized to determine whether a sanction is a punishment is

a two-step process. *Goldsberry*, 821 N.E.2d at 465. First, we must determine whether the legislature intended the proceedings to be civil or criminal. As an aid in this process, we may examine the declared purpose of the legislature as well as the structure and design of the statute. *Id.* If the intent was to impose punishment, then the inquiry ends. If the intent was civil or regulatory, the next question is whether the statutory scheme is so punitive in either purpose or effect as to negate the State's intention to deem it civil. *Id.* The second part of the analysis requires the party challenging the statute to provide the clearest proof of the punitive purpose or effect of the statute. *Id.* Thus, the label given to the statute by the legislature is not determinative if the effect of the statute is so punitive that it can no longer be called a civil sanction. *Id.*

Indiana statutes are not accompanied by recorded legislative history by which we may determine the legislature's intent when it amended the sex offender registration statute. *See id.* In *Spencer v. O'Connor*, this Court considered the circumstances that the sex offender registration provisions were located outside the criminal code and the overall design of the provisions in concluding that the legislature intended the proceedings to be civil in nature. *Spencer v. O'Connor*, 707 N.E.2d 1039, 1043 (Ind.Ct.App.1999), *trans. denied* ("These provisions evidence an intent to monitor the whereabouts of the offender, not to punish the offender."). Douglas correctly points out, however, that the issue before the *Spencer* Court was whether the registry and its distribution by Indiana's Criminal Justice Institute violated the *ex post facto* clause by inflicting punishment. In fact, the defendants [5] in the case only challenged the notification provision [6] of the statutory scheme, because they were not required to register due to committing their offenses prior to the enactment of the original statutory scheme. *Id.* In the facts before us, Douglas's concern is not the loss of anonymity as was the issue in *Spencer*, but rather his loss of liberty by his incarceration for failing to update his registration.

■ Despite the variation in the particular provision challenged within the statutory scheme of the registry, we agree with the analysis of the *Spencer* Court that the overall legislative intent [7] in enacting the sex offender registry was civil and regulatory in nature. As noted in *Spencer*, the registration does not restrain the offender's movement, and the information required to register is not burdensome. *Id.*

---

5. The defendants committed their crimes prior to the June 30, 1994, enactment of the sex offender registration statutes and were therefore not subject to the registration requirement. However, the Registry itself could include all persons convicted of sex offenses regardless of the date of conviction. *See* Ind. Code § 5–2–6–3(b) (Burns Supp. Ed.1997).

6. The *Spencer* Court concluded that the notification provision does not rise to the level of punishment, because it is a regulatory measure that imposes no affirmative restraint or disability on the offender and the Registry contains information that is already available in the public domain. *Spencer*, 707 N.E.2d at 1044.

7. Douglas observes that P.L. 238–2001, the amendment adding the registration requirement for those convicted of a Class C version of sexual misconduct with a minor, read that it was "an act to amend the Indiana Code concerning criminal law and procedure." However, such a label or even a location within the state criminal code is not determinative of legislative intent. *See Smith v. Doe*, 538 U.S. 84, 94, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003) ("The location and labels of a statutory provision do not by themselves transform a civil remedy into a criminal one.").

Douglas contends that even if it is determined that the legislature had a non-punitive intent the effect of a violation results in the punishment of incarceration. He asserts that because the registration requirement is conditioned on the commission of a crime and a violation results in incarceration, the conclusion must be that the effect of the registry is so punitive that it overcomes the non-punitive intent of the legislature. We disagree.

For a regulatory scheme to be effective, there must be some consequence when the law is violated. The imposition of the registration requirement in this case is retrospective in that it would not have applied to Douglas on the day of his sex offense conviction. However, the consequence of violating the registration requirement is not retrospective, because the amended version of the statute was in effect when Douglas failed to register. "Any punishment flowing from the sex offender registration statutes comes from a failure to register, not from the past sex offense." *Meinders v. Weber*, 604 N.W.2d 248, 259 (S.D.2000). Because the punishment arises from a separate offense, the sex offender's failure to register, the punishment is prospective and does not punish him or her for past criminal activity. *Kitze v. Virginia*, 23 Va.App. 213, 475

S.E.2d 830, 833 (1996).[8] As noted by the New Jersey Supreme Court:

> The fact that some deterrent punitive impact may result, does not, however, transform [the sex offender registration] provisions into "punishment" if that impact is an inevitable consequence of the regulatory provision, as distinguished from an impact that results from "excessive" provisions, provisions that do *not* advance the regulatory purpose.

*Doe v. Poritz*, 142 N.J. 1, 662 A.2d 367, 405 (1995). The New Hampshire Supreme Court rejected the same argument that Douglas presents to us that his current prosecution for an act (not registering) that was not illegal when he committed the sex offense is the added punishment for his sex offense. The New Hampshire Supreme Court's response was that the argument "misconstrued the appropriate *ex post facto* analysis. In fact, the defendant is being prosecuted for an act, failure to register, that was itself an offense when the defendant committed it, which presents no problems of retrospectivity." *New Hampshire v. Costello*, 138 N.H. 587, 643 A.2d 531, 533 (1994). We arrive at the same conclusion that there is no *ex post facto* issue in regard to the consequence of Douglas being prosecuted for a separate

---

**8.** Douglas suggests that the lead of the Pennsylvania Supreme Court should be followed. In *Pennsylvania v. Williams*, the Pennsylvania Supreme Court held that the penalty provisions for non-compliance with the sex offender registration statute were constitutionally infirm because:

> While it is understandable that the General Assembly would wish to provide a means of enforcing its registration and address verification scheme, the method it has chosen involves recognized punitive measures (incarceration and probation) that carry a possible lifetime term. As such measures are manifestly in excess of what is needed to ensure compliance, they must be considered punitive, and thus, unconstitutional in-

sofar as they purport to apply to "individual[s] subject to registration under section 9795.1(b)[ ](3)," that is, sexually violent predators.

*Pennsylvania v. Williams*, 574 Pa. 487, 832 A.2d 962, 985 (Pa.2003). However, Douglas fails to note that this conclusion is regarding the punishment for those found to be sexually violent predators and not for those required to register for ten years after a conviction for a sexual offense. *Id.* 832 A.2d at 986, n. 26 ("We offer no opinion regarding the validity of these provisions as pertains to individuals subject to registration under Section 9795.1(b)(1) or (2)."). This comparison is of no moment.

offense that was illegal at the time of its commission. We therefore affirm Douglas's conviction.

## II. Inappropriate Sentence

■ Finally, Douglas contends that his sentence is inappropriate. He argues that his minimal criminal history and probation violations do not warrant an enhanced sentence. Pursuant to Indiana Appellate Rule 7(B), he seeks revision of his sentence.

■ Indiana Appellate Rule 7(B) provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." The "nature of the offense" portion of the 7(B) standard speaks to the statutory presumptive sentence for the class of crimes to which the offense belongs.[9] *See Williams v. State,* 782 N.E.2d 1039, 1051 (Ind.Ct.App.2003), *trans. denied.* In other words, the presumptive sentence is intended to be the starting point for the court's consideration of the appropriate sentence for the particular crimes committed. *Id.* The "character of the offender" portion of the standard refers to the general sentencing considerations and the relevant aggravating and mitigating circumstances. *Id.*

Here, the trial court found two aggravators, Douglas's modest criminal history and his three probation violations. The latter was deemed to be significant. The trial court found Douglas's decision to plead guilty to be a mitigator.

As to the nature of the offense, Douglas failed to inform the local authorities with which he had registered as a sexual offender that he had moved to a new residence.

As to the character of the offender, Douglas's criminal history consists of several minor traffic infractions, Public Intoxication in 1994, Minor Consumption in 1995, three counts of Sexual Misconduct with a Minor, as a Class C felony, and three probation violations. In general, Douglas contends that his criminal history's lack of gravity, dissimilarity, and proximity to the current offense do not warrant an enhanced sentence. We agree.

First, Douglas's sexual misconduct convictions are an element of the current offense and cannot be used to enhance his sentence. *See Angleton v. State,* 714 N.E.2d 156, 160 (Ind.1999). Second, his first two convictions are over ten years old. The remaining convictions are traffic infractions that are not similar in nature to the current offense. Douglas's criminal history does not warrant an enhanced sentence.

After due consideration of Douglas's minimal criminal history, probation violations, and guilty plea, we find that the sentence imposed to be inappropriate and remand for the court to impose the presumptive sentence of eighteen months.

## Conclusion

In conclusion, Douglas did not waive the *ex post facto* issue by pleading guilty without benefit from a plea agreement. The punishment of incarceration for the violation of the sex offender registration requirements is not a violation of the *ex post*

---

**9.** On April 25, 2005, statutory amendments took effect in order to bring Indiana's sentencing scheme in line with the rationale of *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) and its progeny. To that end, the legislature has replaced the term "presumptive" with the term "advisory" in our statutory sentencing scheme. However, Douglas committed the present offense prior to the amendment taking effect.

*facto* clauses, because the violation is a separate offense apart from the sex offense. Finally, we find Douglas's sentence to be inappropriate and revised to the presumptive, now the advisory sentence for a Class D felony.

Conviction affirmed and sentence revised.

BAKER, C.J., and VAIDIK, J., concur.