**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Aug 08 2013, 5:30 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**GREGORY L. FUMAROLO**
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CHANDRA K. HEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JEFFREY G. TOURNEY, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 02A03-1211-CR-503 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Wendy W. Davis, Judge
Cause No. 02D05-1206-FD-801

**August 8, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

Appellant-Defendant, Jeffrey G. Tourney (Tourney), appeals his sentence for Counts I and II, criminal mischief, Class D felonies, Ind. Code § 35-43-1-2; and Counts III-VII, cruelty to an animal, Class A misdemeanors, I.C. § 35-46-3-7.

We affirm.

## ISSUES

Tourney raises one issue on appeal, which we restate as follows: Whether Tourney's sentence was inappropriate in light of the nature of the offense and the character of the offender.

## FACTS AND PROCEDURAL HISTORY

On March 1, 2012, a neighborhood resident contacted the Fort Wayne Animal Care and Control Department (FWACC), reporting that abandoned cats were located at 908 Elmer Street in Fort Wayne, Indiana. FWACC Officer J. Schmeling (Officer Schmeling) was dispatched to investigate. When he arrived and looked through the windows, Officer Schmeling observed multiple cats and a large amount of feces inside the residence. Due to the strong odor emanating from the house, Officer Schemling believed that there could be human and/or animal remains located inside and called the Fort Wayne Police Department.

Shortly thereafter, it was discovered that Constance Anderson (Anderson) along with her fiancé, Tourney, were responsible for the cats. Police officers contacted Anderson, and she consented to a search of the property. Officers entered the residence

2

but were unable to stay inside because of the overwhelming smell of cat urine. Due to the suspected high ammonia levels from the cat urine, the Fort Wayne Fire Department was contacted to test the air quality inside the residence. While normal air quality contains thirty-five parts per million of ammonia, the FWACC testing indicated levels in excess of four times that amount. The residence had to be ventilated for two weeks before the ammonia levels were reduced to safe limits to recover the cats.

Between sixty-six and eighty-five cats were removed from the residence and later euthanized. The cats were emaciated and in poor condition. Due to the fact that Tourney and Anderson did not supply enough food for the cats, the cats began to eat each other and their young when they reproduced. At some point in time, Tourney or Anderson entered the residence, discovered partially eaten kittens or cats, wrapped the remains, and stored them in the refrigerator and freezer. Sixteen dead kittens were found in the freezer, and a cat skull was also recovered from the kitchen floor. Some dead kittens were in pieces, while others appeared to have been struck with a blunt object. Urine soaked into the walls of the first floor and had seeped into the floorboards that divided the first floor and basement. Based on the amount of feces, urine, and overall damage to the residence, it was condemned. The property had been valued at $45,000 before Tourney and Anderson rented it.

On March 13, 2012, the owner of a different property rented by Tourney and Anderson on St. Mary's Avenue in Fort Wayne, contacted FWACC because of a strong smell of cat urine emanating from inside the residence. Once again, Tourney and

3

Anderson were contacted and consented to a search. Twenty-three live cats and twenty-one deceased cats and kittens were discovered. The property required $13,000 in renovations due to damage caused by the cats. In total, 108 live cats were discovered at the two properties, and thirty-seven dead kittens or cats were discovered in the refrigerator or freezer. All but five of them had to be euthanized due to their lack of socialization and health issues.

On March 14, 2012, Tourney met with the authorities and gave a statement. He stated that he and Anderson moved into the Elmer Street residence approximately six years ago. Both he and Anderson cared for the cats up until approximately two years ago when he gave up. Tourney stated that he could not continue caring for the cats as the "conditions were horrible and the house was bad." (Appellant's App. p. 26). Tourney acknowledged that he knew there were deceased cats at both Elmer Street and the St. Mary Avenue residences, and that both he and Anderson continued living at both locations together and knew the conditions in each home.

It was later revealed that Tourney was the handyman for both the Elmer Street and St. Mary's Avenue properties. Tourney and Anderson had been approached previously by the property owners and asked to remove the cats. Tourney and Anderson assured the owners they would, but they did not do so.

On June 12, 2012, the State filed an Information charging Tourney with Counts I and II, criminal mischief, Class D felonies, Ind. Code § 35-43-1-2; Counts III-VII, animal cruelty, Class A misdemeanor, I.C. §35-46-3-7. On October 18, 2012, Tourney pled

4

guilty to all charges without the benefit of a plea agreement. On October 29, 2012, the trial court sentenced Tourney to three years on Count I and three years on Count II with one and a half years suspended to probation on each Count. With regards to Counts III through VII, Tourney was sentenced to one year on each Count. All Counts were to be served concurrently at the Department of Correction. Additionally, Tourney was ordered to pay restitution in the amount of $919.20 to the Fort Wayne Fire Department; $58,000 to the property owners; and $590.30 to FWACC.

Tourney now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

Tourney contends that the sentence imposed by the trial court was inappropriate in light of the nature of the offense and the character of the offender. Although a trial court may have acted within its lawful discretion in imposing a sentence, Article 7, Sections 4 and 6 of the Indiana Constitution authorize independent appellate review and revision of sentences through Indiana Appellate Rule 7(B), which states that a court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender. *See* Ind. App. Rule 7(B). Under this rule, the burden is on the defendant to persuade the appellate court that his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). Moreover, the underlying question is not whether another sentence is *more* appropriate; rather, the question is whether the sentence imposed is inappropriate. *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008).

The trial court is far better situated than the appellate court to assess nature of offenses, character of offender, and offender's need for long-term treatment in a penal facility, and to assess appropriateness of enhanced sentences or consecutive sentences on that basis. *Allen v. State*, 722 N.E.2d 1246, 1258 (Ind. Ct. App. 2000). The "nature of offense compares the defendant's actions with the required showing to sustain a conviction under the charged offense." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). The "character of the offender" allows for a broader consideration of the defendant's character. *Douglas v. State*, 878 N.E.2d 873, 881 (Ind. Ct. App. 2007).

With respect to the nature of the offense, we assess Tourney's conduct with the requirements to sustain a conviction under the charged offense. Tourney was convicted of criminal mischief, which required the State to prove that he recklessly, knowingly, or intentionally damaged the properties, without consent and caused pecuniary loss of at least $2,500.00. *See* I.C. § 35-43-1-2. Tourney was aware of the state of the property, as Tourney advised that he could not continue caring for the cats as the "conditions were horrible and the house was bad." (Appellant's App. p. 26). Neither landlord consented to Tourney's method of housing and maintaining the cats. Tourney and Anderson caused extensive damage amounting to $45,000 in damages to the Elmer Street property and $13,358.11 in damages to the St. Mary's Avenue property.

Tourney's animal cruelty convictions required the State to prove that Tourney recklessly, knowingly, or intentionally abandoned or neglected an animal by restraining it in a manner that seriously endangered the animal's life or health. *See* I.C. § 35-46-3-7.

6

Tourney and Anderson resided at the Elmer Street property in 2006; however, they left the property around 2010 due to its neglected state. There, approximately eighty-five cats were left without adequate nourishment. The air quality test showed ammonia levels four times higher than the expected amount for a safe living space. Around thirty-seven dead cats were kept in their refrigerators and freezers. As a consequence of Tourney and Anderson's neglect, another 103 cats had to be euthanized.

With respect to the character of the offender, the record indicates that Tourney was a trusted employee of the property owners. When Tourney was told to remove the cats from the properties, he pretended to do so and gave assurance that he had done so. Yet, Tourney continued to keep cats on the properties and never remedied the situation.

Finally, Tourney has had two prior misdemeanor convictions including an operating while intoxicated and a criminal conversion charge. Based upon our review, we see nothing in the nature of the offense or in the character of the offender to lead us to conclude that Tourney's sentence is inappropriate.

## CONCLUSION

Based on the foregoing, we conclude that Tourney's sentence was not inappropriate in light of the nature of the offense and the character of the offender.

Affirmed.

BRADFORD, J. and BROWN, J. concur