# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jan 31 2018, 11:51 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Marielena Duerring<br>South Bend, Indiana | Curtis T. Hill, Jr.<br>Attorney General of Indiana |
| | Tyler G. Banks<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Nakomi Tamasha Neal,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | January 31, 2018<br><br>Court of Appeals Cause No. 71A03-1708-CR-1814<br><br>Appeal from the St. Joseph Superior Court<br><br>The Honorable Jeffrey L. Sanford, Judge<br><br>Trial Court Cause No. 71D03-1609-F5-191 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Nakomi Tamasha Neal (Neal), appeals his sentence following his conviction for carrying a handgun without a license, a Level 5 felony, Ind. Code § 35-47-2-1; and criminal recklessness, a Level 6 felony, I.C. § 35-42-2-2(b)(1)(A).

We affirm.

# ISSUE

Neal presents a single issue on appeal, which we restate as: Whether Neal's sentence is inappropriate in light of the nature of the offenses and his character.

# FACTS AND PROCEDURAL HISTORY

On the morning of September 22, 2016, Tiffany Ramsey (Tiffany) kept her three young children home from school since they were not feeling well. At the time, Tiffany was expecting her fourth child, and she resided with her brother-in-law, Brian Ramsey (Brian), at 918 Milton Street, South Bend, Indiana. Sometime that morning, Tiffany left the house with her children and walked to a 7-Eleven that was about two blocks from Brian's house. After buying some food, she and her children exited the store. Outside the store, Tiffany saw a male, later identified as Neal, sitting in a silver minivan which was parked on the wrong side of the street. Neal's two minor children were inside the vehicle. Neal motioned for Tiffany to approach his vehicle, and Tiffany agreed since she thought Neal was an old friend. However, once she got close to Neal's vehicle, she realized that she did not know Neal. As such, Tiffany and her children

walked past and continued their journey back to Brian's house. Neal again summoned Tiffany to return to his vehicle, but this time, he threated Tiffany by stating, "I'm going to kidnap your ass." (Transcript Vol. II p. 47). Additionally, Neal gestured to Tiffany's three-year-old child to approach his vehicle. Feeling uncomfortable with the events, Tiffany called Brian. Brian failed to pick up, but on the third try, she explained the events that had just transpired. As Tiffany approached the house, Brian was on the porch and could see Neal's silver minivan sitting stationary before Neal began driving down the road toward Tiffany. With the two older children running in front, and her youngest child in her arms, they all ran toward Brian's house. At that point, Brian left the porch and was standing in the road. As Neal approached Brian, he slowed down. Brian then saw Neal point a gun out of the driver's side window and fire a shot. Although Brian was armed with a firearm, he did not return fire; instead, Brian ducked behind a parked vehicle on the street. Neal fired a second random shot and sped away.

[5] Later that day, Brian was at a friend's house that was about a block from his house. When Brian's wife came to pick him up, Brian recognized Neal's minivan parked on the street, and Neal was sitting on the porch of a nearby house. When Brian and his wife arrived home, they contacted the South Bend Police Department. The police later obtained a warrant to search the house where Neal was seen sitting. During the search, the police determined that Neal resided in the house, and a .22 caliber handgun was recovered in the attic. A firearm examiner later concluded that the two casings found near Brian's

house had been fired from the .22 caliber handgun recovered from Neal's house.

[6] On November 23, 2016, the State filed an Information, charging Neal with Count I, carrying a handgun without a license, a Class A misdemeanor; and Count II, criminal recklessness, a Level 6 felony. The State additionally charged Neal with Count III, carrying a handgun without a license, a Level 5 felony based on the allegation that Neal had previously been convicted of a Class B felony burglary offense in 2011. A bifurcated trial ensued on June 29-30, 2017, and at the first stage, a jury found Neal guilty of Count I, carrying a handgun without a license, a Class A misdemeanor; and Count II, criminal recklessness, a Level 6 felony. The trial then proceeded to phase two, during which Neal waived his right to a jury trial, and the State presented evidence of Neal's prior felony burglary conviction. Based on the evidence, Neal was found guilty of Count III, carrying a handgun without a license, a Level 5 felony. On July 14, 2017, the trial court conducted a sentencing hearing. The trial court merged Count I into Count III and subsequently sentenced Neal to concurrent sentences of two and one-half years for the Level 6 felony criminal recklessness offense, and six years for the Level 5 felony carrying a handgun without a license.

[7] Neal now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

[8] Neal claims that his sentence is inappropriate in light of the nature of the offenses and his character. Indiana Appellate Rule 7(B) empowers us to independently review and revise sentences authorized by statute if, after due consideration, we find the trial court's decision inappropriate in light of the nature of the offense and the character of the offender. *Reid v. State*, 876 N.E.2d 1114, 1116 (Ind. 2007). The "nature of offense" compares the defendant's actions with the required showing to sustain a conviction under the charged offense, while the "character of the offender" permits a broader consideration of the defendant's character. *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008); *Douglas v. State*, 878 N.E.2d 873, 881 (Ind. Ct. App. 2007). An appellant bears the burden of showing that both prongs of the inquiry favor a revision of his sentence. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). Whether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other considerations that come to light in a given case. *Cardwell*, 895 N.E.2d at 1224. Our court focuses on "the length of the aggregate sentence and how it is to be served." *Id*.

[9] The advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed. *Abbott v. State*, 961 N.E.2d 1016, 1019 (Ind. 2012). For his Level 5 felony carrying a handgun without a license, Neal faced a sentencing range of one to six years, with the advisory sentence being three. I.C. § 35-50-2-6. Neal was sentenced to six years, which is the

statutory maximum. Secondly, for his Level 6 felony criminal recklessness, Neal faced a sentencing range of six months to two and one-half years, with the advisory sentence being one year. I.C. § 35-50-2-7(b). The trial court imposed a maximum sentence of two and one-half years.

[10] We first examine the nature of Neal's offenses. The series of events leading to the shooting begins with Neal summoning Tiffany to his vehicle, and when Tiffany refused, he threated Tiffany by stating he was "going to kidnap [her] ass." (Transcript Vol. II p. 47). Neal then trailed Tiffany, and when Neal finally arrived at Tiffany's home, he fired two arbitrary shots toward the home from his moving vehicle and then sped away. The record shows that while Brian was armed with a firearm during the encounter, he did not discharge his weapon. Had Brian done so, the incident would have carried an increased risk to the injury of either Tiffany's children, Neal's children, or other innocent bystanders. Neal's actions were senseless, dangerous, and demonstrate an alarming disregard for the safety of others. Therefore, we conclude Neal's sentence is not inappropriate in light of the egregious nature of his offenses.

[11] As for Neal's character, we acknowledge that he was only twenty-five years old at the time of his offense. Between 2006 and 2008, Neal had several contacts with the juvenile justice system for disorderly conduct, resisting law enforcement (multiple), conversion, false informing, and attempted robbery. As an adult, in 2010, Neal was convicted for driving while suspended. Then in 2011, he was convicted of burglary, theft, and criminal recklessness. For the 2011 offenses, Neal was placed on home detention and supervised probation.

While serving that probation, Neal was charged with domestic battery in 2012. Based on the new battery conviction, the State moved to revoke Neal's probation. Notwithstanding Neal's probation violation, the trial court continued Neal's supervised probation. In 2013, while still on probation for the 2011 offenses, Neal was charged with invasion of privacy, resisting law enforcement, and battery. Following the dismissal of invasion of privacy and resisting law enforcement charges, Neal was placed on a five-year probation for the battery offense starting November 13, 2013. In 2014, the State charged Neal with domestic battery and conversion; however, these charges were later dismissed. Shortly before the commission of these instant offenses, in 2016, Neal was charged with a battery offense, but was later acquitted. Indeed, Neal has demonstrated an inability to lead a law-abiding life. More significantly, when Neal committed the instant offenses, he was still on probation for his 2013 battery offense. The risk-assessment tool within the PSI indicated that Neal was in the "very high" risk category to reoffend. (Appellant's App. Conf. Vol. II p. 36).

[12] Neal argues that "more importantly there is evidence that [he] is struggling with mental health issues that bear directly to his" criminal behavior. (Appellant's Br. p. 9). We disagree. Most of the evidence regarding Neal's mental-health was documented in the PSI, which noted Neal's mental health as "fair," however, Neal "experienced anger/rage and depression" and "suffered from frustration and hopelessness." (Appellant's App. Conf. Vol. II p. 35). As the State correctly argues, Neal has not shown how his alleged mental health issues

implicated his current offenses. Moreover, Neal's self-serving allegations of his mental health is unsupported by any formal diagnosis or independent testimony from a physician or counselor at his sentencing hearing to show a nexus between his mental illness and the crimes committed. Accordingly, we find that his mental-health argument does not aid his claim on appeal.

After due consideration of the trial court's decision and in light of Neal's criminal history, we cannot say that the sentence imposed by the trial court is inappropriate in light of the nature of the offenses and the character of the offender.

# CONCLUSION

In sum, we conclude that Neal's sentence is not inappropriate in light of the nature of the offenses and his character.

Affirmed.

Baker, J. and Brown, J. concur