## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 09 2018, 7:49 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

P. Jeffrey Schlesinger
Crown Point, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Henry A. Flores, Jr.
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| John Charles Prenderville, *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff.* | May 9, 2018 <br><br> Court of Appeals Cause No. 45A04-1712-CR-2838 <br><br> Appeal from the Lake Superior Court <br><br> The Honorable Diane Ross Boswell, Judge <br><br> Trial Court Cause No. 45G03-1701-F6-16 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, John Charles Prenderville (Prenderville), appeals his one-year sentence after he pleaded guilty to domestic battery, a Class A misdemeanor, Ind. Code § 35-42-2-1.3(a).

We affirm.

# ISSUES

Prenderville presents two issues on appeal, which we restate as:

(1) Whether Prenderville was entitled to credit time for time served on pre-trial electronic monitoring; and

(2) Whether Prenderville's sentence is inappropriate in light of the nature of the offense and his character.

# FACTS AND PROCEDURAL HISTORY

On January 20, 2017, Prenderville and his ex-wife, Mary Pimental (Pimental), were celebrating Prenderville's birthday at a bar in Lake County, Indiana. Prenderville became intoxicated and "obnoxious and began harassing [Pimental] and belittling her" by "calling her stupid and a dumb bitch, and using other profanities." (Appellant's App. Vol. II, p. 7). At around 2:30 a.m., the pair left the bar in a vehicle driven by Pimental. On the drive home, Prenderville became more "irate and continued to yell" at Pimental. (Appellant's App. Vol. II, p. 7). In the process, Prenderville, who had a "to go beer cup from the bar," tossed the beer at Pimental. (Appellant's App. Vol. II,

p. 7). Pimental became scared of Prenderville's actions, and she used her cell phone to "record his yelling." (Appellant's App. Vol. II, p. 7). Prenderville then "punched the vehicle's [rear-view] mirror, punched the dashboard, and punched . . . Pimental in the face while she was driving." (Appellant's App. Vol. II, p. 30). Pimental reacted and punched Prenderville "in the stomach and told him to leave her alone." (Appellant's App. Vol. II, p. 7). She also indicated that she was driving to the police station to report the incident. Upon hearing that, Prenderville "grabbed the steering wheel" and he "tried to steer the vehicle, causing it to move erratically." (Appellant's App. Vol. II, p. 7). Prenderville continued to threaten Pimental by claiming that he was going to "beat her ass" and he called her a "bitch and a whore." (Appellant's App. Vol. II, p. 7). When they arrived home, Pimental went inside her house leaving Prenderville inside the vehicle. Prenderville "began to blow the horn and when [Pimental] did not come out[,] he entered the house" and he "threatened to beat her up." (Appellant's App. Vol. II, p. 7). The Lake County Police Department was contacted, and Prenderville was arrested.

[5] On January 21, 2017, in Cause Number 45G03-1701-F6-00016(F6-16), the State charged Prenderville with Count I, intimidation, a Level 6 felony; Count II, domestic battery resulting in moderate bodily injury, a Level 6 felony; Count III, domestic battery, a Class A misdemeanor; Count IV, criminal recklessness, a Class B misdemeanor; and Count V, criminal mischief, a Class B misdemeanor. Prenderville spent four days in jail and was placed on electronic monitoring on February 13, 2017.

[6] On September 18, 2017, pursuant to a plea agreement, Prenderville agreed to plead guilty to Count III, domestic battery, a Class A misdemeanor, and the State agreed to dismiss all other Counts. The agreement provided that Prenderville would admit to violating his probations in Cause Numbers 45G03-1208-FB-00086 (FB-86), and 45G03-1512-F6-235(F6-235). While the parties agreed that sentencing for the Class A misdemeanor domestic battery offense in F6-16, as well as any sentences imposed pursuant to the petitions to revoke probation under FB-86 and F6-235, would be left open to the trial court, they also agreed that any of the sentences imposed shall run consecutively. Lastly, as part of the written plea agreement, Prenderville specifically agreed that he was not entitled to credit time served while on electronic monitoring.

[7] That same day, a guilty plea hearing was conducted and the trial court determined that a factual basis existed for Prenderville's charged offense and it accepted Prenderville's plea. On November 6, 2017, the trial court conducted a sentencing hearing. The trial court sentenced Prenderville to one year for the Class A misdemeanor domestic battery charge in Lake County Community Corrections. With regard to credit time served while on pretrial electronic monitoring, Prenderville requested the trial court to award him all of the 255 days spent on electronic monitoring, plus an additional one-quarter of 255 days as good time credit. In response, the State argued that

> I don't recall personally any case as I sit here right now where the [c]ourt ordered all of the days plus one-quarter. My recollection was that it was one-quarter only.

(Sent. Tr. Vol. II, p. 19). At the close of the hearing, the trial court determined that Prenderville served four days in jail. For each of those four days he spent in confinement, Prenderville earned one day of credit-time, totaling eight days. In addition, the trial court awarded Prenderville a quarter of the 255 days spent on electronic monitoring, *i.e.*, sixty-four days, as good time credit. In sum, the trial court awarded Prenderville a total of seventy-two days of good time credit toward his sentence.

[8]     Prenderville now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

### I. *Credit Time for Time Served on Pretrial Electronic Monitoring*

[9]     Prenderville argues that he is entitled to 255 days of pretrial credit time served while on he was on electronic monitoring. "Credit for time served" is defined as "the credit toward the sentence a prisoner receives for time actually served." *Purcell v. State*, 721 N.E.2d 220, 222 (Ind. 1999). "Good time credit" is "the additional credit a prisoner receives for good behavior and educational attainment." *Id.* Prenderville appeals the trial court's decision on credit time served while on pre-trial electronic monitoring.

[10]    Following his release from jail, Prenderville was placed on electronic monitoring. At his sentencing hearing, Prenderville had been on electronic monitoring for a total of 255 days. However, in September of 2017, the parties entered into a plea agreement, and Prenderville specifically agreed that he was

not entitled to pretrial credit time for the time served while on electronic monitoring.

[11] A plea agreement is contractual in nature, and binds the defendant, the State, and the trial court. *Valenzuela v. State*, 898 N.E.2d 480, 482 (Ind. Ct. App. 2008), *trans. denied*. All parties are bound to the terms of a plea agreement accepted by the court, but the plea agreement will only be valid if it was knowingly and willingly agreed to. *Creech v. State*, 887 N.E.2d 73, 75 (Ind. 2008)). Absent any claim that a defendant's guilty plea was not knowingly or voluntarily entered, a defendant is bound by the terms of the plea agreement. *See State v. Holloway*, 980 N.E.2d 331, 334 (Ind. Ct. App. 2012). Prenderville makes no argument that his plea was involuntary. We also find that in accepting the plea agreement, Prenderville agreed that he was not entitled to pretrial credit time for the time served on electronic monitoring. Accordingly, we hold that Prenderville's argument that the trial court abused its discretion by failing to award him 255 days of pretrial credit time spent on electronic monitoring toward his sentence is without merit.

## II. *Inappropriate Sentence*

[12] Prenderville claims that his one-year sentence is inappropriate in light of the nature of the offense and his character. Indiana Appellate Rule 7(B) empowers us to independently review and revise sentences authorized by statute if, after due consideration, we find the trial court's decision inappropriate in light of the nature of the offense and the character of the offender. *Reid v. State*, 876 N.E.2d

1114, 1116 (Ind. 2007). The "nature of offense" compares the defendant's actions with the required showing to sustain a conviction under the charged offense, while the "character of the offender" permits a broader consideration of the defendant's character. *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008); *Douglas v. State*, 878 N.E.2d 873, 881 (Ind. Ct. App. 2007). An appellant bears the burden of showing that both prongs of the inquiry favor a revision of his sentence. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). Whether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other considerations that come to light in a given case. *Cardwell*, 895 N.E.2d at 1224. Our court focuses on "the length of the aggregate sentence and how it is to be served." *Id.*

[13] The advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed. *Abbott v. State*, 961 N.E.2d 1016, 1019 (Ind. 2012). For his Class A misdemeanor domestic battery, Prenderville faced a maximum sentence of one year. I.C. § 35-50-3-2. Here, the trial court imposed the maximum sentence.

[14] The nature of the offense is found in the details and circumstances of the commission of the offense and the defendant's participation. *Croy v. State*, 953 N.E.2d 660, 664 (Ind. Ct. App. 2011). Prenderville and his ex-wife were at a bar celebrating Prenderville's birthday. Prenderville became intoxicated and obnoxious and he demeaned Pimental by calling her abusive names. Although the parties were divorced at the time, Pimental was housing Prenderville since

he did not have a place to stay. As the pair left the bar in a vehicle driven by Pimental, Prenderville sat in the passenger seat and he continued to harangue Pimental with insults. Eventually, Prenderville tossed his beer at Pimental, broke the rearview mirror, cracked the windshield, and punched Pimental in her face. When Pimental threatened to drive to the police station, Prenderville grabbed the steering wheel, which caused the vehicle to move erratically. When they arrived at Pimental's residence, Pimental went inside her house leaving Prenderville inside the vehicle. Prenderville "began to blow the horn" and when Pimental did not come out, he entered the house and "threatened to beat her up." (Appellant's App. Vol. II, p. 7). From the foregoing facts, we are not persuaded that anything about the nature of Prenderville's offense warrants a reduction in the imposed sentence.

[15] When considering the character of the offender, one relevant fact is the defendant's criminal history. *Rutherford v. State*, 866 N.E.2d 867, 874 (Ind. Ct. App. 2007). The significance of a criminal history in assessing a defendant's character varies based on the gravity, nature, and number of prior offenses in relation to the current offense. *Id*. While a record of arrests may not be used as evidence of criminal history, it can be "relevant to the trial court's assessment of the defendant's character in terms of the risk that he will commit another crime." *Cotto v. State*, 829 N.E.2d 520, 526 (Ind. 2005). Prenderville has amassed multiple criminal convictions and a record of arrests in Indiana and Illinois. His Illinois criminal history includes battery, possession of a controlled substance, unlawful use of a concealed handgun, driving while suspended,

operating a motor vehicle without insurance, and driving under the influence. Prenderville was arrested in Indiana for his first offense in 2004 for intimidation with a deadly weapon. His other Indiana arrests and convictions include driving while suspended (multiple), intimidation, invasion of privacy, criminal trespass, aggravated battery causing bodily injury, battery committed by means of deadly a weapon, criminal recklessness, and driving under the influence (multiple). We note that some of Prenderville's past offenses are alcohol related. While committing the instant offense, Prenderville became intoxicated and punched Pimental in her face while she was driving.

[16] Finally, Prenderville argues that he took responsibility when he pleaded guilty to the offense of domestic battery. However, Prenderville received a substantial benefit by pleading guilty. Due to Prenderville's plea of guilty, the State dismissed two other felony charges and two misdemeanor charges. Moreover, Prenderville committed the instant offense while serving probation in two other Causes: under FB-86, Prenderville was serving four years of probation for his criminal recklessness conviction; and in F6-235, Prenderville was serving one year of probation for operating a vehicle while intoxicated. Prenderville's criminal history and prior stints in jail have not deterred him from breaking the law. For all of the above reasons, Prenderville has failed to meet his burden in persuading us that his sentence is inappropriate in light of his character.

# CONCLUSION

[17] In sum, we conclude that the trial court did not abuse its discretion by failing to award Prenderville 255 days of pretrial credit time spent on electronic

monitoring; and that Prenderville's sentence is not inappropriate in light of the nature of the offense and his character.

[18] Affirmed.

[19] May, J. & Mathias, J. concur