## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 30 2019, 9:12 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Donald R. Shuler
Barkes Kolbus Rife & Shuler, LLP
Goshen, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Chandra K. Hein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Vincent L. Thompson, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | January 30, 2019 <br><br> Court of Appeals Case No. 18A-CR-1733 <br><br> Appeal from the Elkhart Superior Court <br><br> The Honorable Gretchen S. Lund, Judge <br><br> Trial Court Cause No. 20D04-1706-F6-893 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Vincent L. Thompson (Thompson), appeals his conviction for intimidation, a Level 6 felony, Ind. Code § 35-45-2-1(a)(1); -(b)(1)(A).

We affirm.

# ISSUES

Thompson presents this court with two issues on appeal which we restate as:

(1) Whether a material variance existed between the charging Information and the evidence presented at the bench trial which prejudiced Thompson in the preparation of his defense; and

(2) Whether Thompson's sentence is inappropriate considering the nature of his offense and his character.

# FACTS AND PROCEDURAL HISTORY

When Rebecca Tramble (Rebecca) arrived home from work around noon on June 19, 2017, she noticed an unfamiliar vehicle and driver parked in her driveway. Upon entering the residence, Rebecca inquired with her eldest daughter about the car. Rebecca noticed that her daughter acted strangely when she informed Rebecca that the person in the driveway was looking for Rebecca's youngest daughter, fifteen-year-old K.T.

Rebecca went outside to speak with the driver of the unfamiliar vehicle, who was later identified as forty-five-year-old Thompson. Thompson told Rebecca

that K.T. "owed him money or sex and he was there to get her." (Transcript p. 22). He explained that K.T. "and some other of her friends were at his crib, [] meaning [his] house, were partying and he provided her with alcohol and weed and [K.T.] told him that she would pay him for that." (Tr. p. 27). Rebecca was "shocked" and, in an attempt to de-escalate the situation, told Thompson that he would have "to deal with [K.T.'s] father when he got home from work." (Tr. p. 23). Doing "what he has to do to get paid[,]" Thompson told Rebecca that "he will bring his crew and shoot up [her] home." (Tr. p. 54). After all, "he was the big time person of the GD Gangster Disciples and he's not scared of anything or anybody and he has a crew he will bring with him." (Tr. p. 25). During this conversation, Rebecca glanced down and noticed a gun on Thompson's lap but Thompson never made any motion towards it. Following the incident, Rebecca called her husband, Gary Tramble (Gary) to come home from work.

[6] When Gary arrived at the residence, Gary's daughters were at home but Rebecca had left to pick up her brother. On her way, she saw Thompson's car with Thompson and others driving towards her house. Rebecca stopped and called the police; meanwhile, she saw Thompson "strutting up to [her] husband." (Tr. p. 27). She explained to the police that she was afraid Thompson would shoot her husband because Thompson had said earlier that he would "shoot [her] house up" when he came back. (Appellant's App. Vol. II, p. 41).

[7] When Thompson started walking up the driveway, Gary walked towards Thompson. Thompson asked Gary whether he was "the man of the household," and explained to him that he had three choices: Gary could "either give him $120, [or] [K.T.] come outside and [Thompson] take her with him, or they shootin' up [Gary's] house." (Tr. p. 60). When the police officers arrived, Thompson took off running, and he was only apprehended after being subdued with a taser by the responding officers.

[8] On June 21, 2017, the State filed an Information, charging Thompson with Count I, intimidation, a Level 6 felony; and Count II, resisting law enforcement, a Class A misdemeanor. On April 9, 2018, the case proceeded to a bench trial. At the beginning of the bench trial, Thompson pled guilty to resisting law enforcement, a Class A misdemeanor, and proceeded to trial on the intimidation charge only. At the conclusion of the evidence, the trial court took the matter under advisement. On May 24, 2018, the trial court issued an Order finding Thompson guilty of intimidation, a Level 6 felony. On June 20, 2018, the trial court sentenced Thompson to concurrent terms of two-and-one-half years executed on the intimidation offense and one year for resisting law enforcement.

[9] Thompson now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

## I. *Charging Information*

[10] Thompson contends that a material variance existed between the Information and the evidence presented at trial. Specifically, he maintains that the trial court relied on evidence other than the alleged threat to Rebecca to find Thompson guilty of intimidation as a Level 6 felony. Because his defense rested on the threat uttered to Rebecca, Thompson claims to have been prejudiced by this material variance.

[11] Because the charging information advises a defendant of the accusations against him, the allegations in the pleading and the evidence used at trial must be consistent with one another. *Simmons v. State*, 585 N.E.2d 1341, 1344 (Ind. Ct. App. 1992). A variance is an essential difference between the two. *Mitchem v. State*, 685 N.E.2d 671, 677 (Ind. 1997). Not all variances, however, are fatal. *Id*. Relief is required only if the variance (1) misled the defendant in preparing a defense, resulting in prejudice, or (2) leaves the defendant vulnerable to future prosecution under the same evidence. *Winn v. State*, 748 N.E.2d 352, 356 (Ind. 2001).

[12] We resolve a claim of fatal variance under our sufficiency standard because the defendant's essential argument is that the evidence produced at trial so differed from the charging information that it was insufficient to convict him as charged. *Blount v. State*, 22 N.E.3d 559, 565 (Ind. 2014). Accordingly, we do not reweigh the evidence or judge the credibility of witnesses; rather, we consider and draw reasonable inferences from the evidence that support the judgment. *Id*. We will affirm a conviction unless no reasonable trier of fact could find every element proven beyond a reasonable doubt. *Id*.

[13]     On June 22, 2017, the State filed Count I, intimidation, a Level 6 felony, against Thompson, alleging that:

> One [Thompson] did communicate a threat to commit a forcible felony, to-wit: to shoot another person, to-wit: [Rebecca] with the intent that [Rebecca] engage in conduct against her will, to-wit: pay money[.]

(Appellant's App. Vol. II, p. 16). Pointing to a fatal material variance, Thompson maintains that the trial court erroneously relied on evidence of Thompson's threat to Gary to convict him of intimidation.

[14]     Here, the evidence adduced at trial reflects that Thompson informed Rebecca that K.T. owed him "money or sex and he was there to get her." (Tr. p. 22). When Rebecca told Thompson that he had to come back when Gary was home, Thompson told her that he would come back with his crew and shoot up her home. While the conversation took place, Thompson had a gun in his lap.

[15]     Furthermore, in its written Order, the trial court addressed Thompson's contention of a material variance as follows:

> In this case, the State alleged in the charging [I]nformation that the forcible felony was "to shoot another person, to-wit: [Rebecca]." The evidence presented was that [Thompson] verbally threatened [Rebecca] to 'shoot up the house.' When he made the threat, [Rebecca] was standing in front of her house where [Thompson] knew she lived with [Gary] and her children. The fact that [Thompson] did not vocalize, 'I am going to shoot you' does not mean that [Thompson] did not threaten to shoot [Rebecca] inside her house when he stated that he would 'shoot up the house.' It is logical to infer that a threat to shoot up

someone's house means that the shots could, and very likely would, hit the individuals inside the house. For these reasons, the [c]ourt finds that there was no material variance.

(Appellant's App. Vol. II, p. 43). Accordingly, as the trial court's Order clarifies, the court relied on evidence and reasonable inferences thereof to support Thompson's threat to Rebecca and to find him guilty of intimidation. Therefore, we cannot say that a material variance existed between the evidence and the charging Information.

## II. *Sentence*

[16] Next, Thompson contends that the trial court imposed an inappropriate sentence pursuant to Indiana Appellate Rule 7(B). "Appellate review of the merits of a sentence may be sought on the grounds outlined in Appellate Rule 7(B)." *Cardwell v. State*, 895 N.E.2d 1219, 1223 (Ind. 2008). Under Indiana Appellate Rule 7(B), a reviewing court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the [c]ourt finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). Although Indiana Appellate Rule 7(B) leaves much to the discretion of appellate courts, it does not detract from the long-recognized principle that "sentencing is principally a discretionary function in which the trial court's judgment should receive considerable deference." *Cardwell*, 895 N.E.2d at 1222. In conducting review under this standard, our supreme court has acknowledged that "reasonable minds may differ" on the appropriateness of a sentence based on "our sense of

the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other facts that come to light in a given case." *Buchanan v. State*, 767 N.E.2d at 967, 970 (Ind. 2002). Thompson has the burden to establish that his sentence is inappropriate in light of the nature of the offense and his character. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

[17] The "nature of the offense" portion of the 7(B) standard speaks to the statutory presumptive sentence for the class of crimes to which the offense belongs. *Douglas v. State*, 878 N.E.2d 873, 881 (Ind. Ct. App. 2007). In other words, the presumptive sentence is intended to be the starting point for the court's consideration of the appropriate sentence for the particular crimes committed. *Id*. Thompson was convicted of a Level 6 felony which carries with it a fixed term of between six months and two-and-one-half-years, with the advisory sentence being one year. *See* I.C. § 35-50-2-7(b). He pled guilty to a Class A misdemeanor, which limits imprisonment to "a fixed term of not more than one year." I.C. § 35-50-3-2. The trial court sentenced Thompson to the maximum statutory sentence.

[18] The specific circumstances of this offense should be appalling to any parent. Thompson, a forty-five-year-old male, insisted that a mother hand over her fifteen-year-old daughter for sex. Thompson believed he was owed payment for supplying minors with alcohol and weed and while failing to see the depravity of his action, he justified his demand by alleging that K.T. was "in the streets." (Appellant's App. Vol. II, p. 56). To enforce the significance of his demand, he

told Rebecca that "he was the big time person of the GD Gangster disciples[.]" (Tr. p. 25).

[19] In turn, the "character of the offender" prong of Indiana Appellate Rule 7(B) refers to the general sentencing considerations and the relevant aggravating and mitigating circumstances. *Douglas*, 878 N.E.2d at 881. Although Thompson has no extensive criminal history, the convictions he did accumulate are significant and revealing of his character. In 1995, Thompson was convicted of rape as a Class A felony and criminal confinement as a Class B felony. He was released in 2010. While he was on parole for the rape charge, he committed the instant offense. Thompson's criminal history, combined with his lack of remorse and seemingly permissive attitude toward forcing a fifteen-year-old girl to have sex are suggestive of a questionable moral compass and an unwillingness to abide by societal rules. We decline Thompson's request to revise his sentence.

## CONCLUSION

[20] Based on the foregoing, we hold that there was no material variance between the evidence presented at trial and the State's Information. In addition, we conclude that Thompson's sentence is not inappropriate in light of the nature of the offense and his character.

[21] Affirmed.

[22] Kirsch, J. and Robb, J. concur