## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 05 2018, 6:49 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Donald E. C. Leicht
Kokomo, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tyler G. Banks
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Robert Parker,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

December 5, 2018

Court of Appeals Cause No. 18A-CR-1582

Appeal from the Howard Superior Court

The Honorable William C. Menges, Judge

Trial Court Cause No. 34D01-1610-F3-1071

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Robert Parker (Parker), appeals his sentence following his conviction after pleading guilty to dealing in a narcotic drug, a Level 3 felony, Ind. Code § 35-48-4-1(d)(2).

We affirm, but we remand with instructions.

# ISSUES

Parker presents two issues on appeal, which we restate as the following three issues:

(1) Whether the trial court erred by not awarding Parker credit time for days he served in jail prior to his sentencing;

(2) Whether Parker was entitled to receive credit time during the time he participated in the drug court program; and

(3) Whether Parker's sentence is inappropriate in light of the nature of the offense and his character.

# FACTS AND PROCEDURAL HISTORY

On October 12, 2016, Parker was the target of an arrest warrant based on allegations that he had previously sold drugs to a confidential informant working with the Kokomo Police Department drug task force unit. On that day, the same confidential informant called Parker on his cellphone and arranged to buy "4 grams of heroin and 3.5 grams of cocaine" from Parker.

(Appellant's App. Vol. II, p. 17). Also, at the request of the confidential informant, Parker agreed to bring a scale with him. Parker arranged to meet the confidential informant at the parking lot of a restaurant. Parker's friend, Christopher Carter (Carter), accompanied Parker to the drug sale.

[5] With no intention of having the confidential informant present at the drug buy, the officers arrived at the agreed meeting spot and observed Parker standing at the corner of the restaurant smoking a cigarette. The officers instructed the confidential informant to call Parker to confirm that Parker was the person outside the restaurant. Parker confirmed that he was "standing outside smoking a cigarette." (Appellant's App. Vol. II, p. 22). Following that confirmation, the officers approached and arrested Parker. In Parker's left coat pocket, the officers found two knotted plastic bags. One held 4 grams of a white powered substance which tested positive for cocaine, and the other knotted bag held 3.5 grams of a grey powdered substance, which field tested positive for heroin. The officers also recovered a .38 caliber handgun in Parker's front waistband. Upon running the gun's serial number, the report showed that the gun had previously been reported stolen. The scale which Parker had agreed to bring to the drug sale was located inside Parker's vehicle. A whitish residue on the scale field tested positive for cocaine. Carter, who was inside the vehicle, was also arrested.

[6] On October 14, 2016, the State filed an Information, charging Parker with Count I, dealing in a narcotic drug, a Level 3 felony; Count II, dealing in cocaine, a Level 3 felony; Count III, possession of a narcotic drug, a Level 5

felony; Count IV, possession of cocaine, a Level 5 felony; and Count V, theft, a Level 6 felony.

[7]     On October 4, 2017, pursuant to a plea agreement, Parker agreed to plead guilty to Level 3 felony dealing in a narcotic drug, and the State agree to dismiss all the remaining charges. The agreement called for a deferment of Parker's conviction and sentence if Parker successfully completed the Howard County Drug Court Program. The agreement, however, stipulated that non-compliance with the terms and conditions of the drug program would result in Parker's conviction and sentencing to the Level 3 felony dealing in a narcotic drug.

[8]     October 5, 2017, Parker was released into the Howard County Drug Court Program. During his participation in the drug court program, Parker violated the terms and conditions of the program from November 8, 2017, through November 15, 2017, and also from December 6, 2017, through January 10, 2018. Whenever Parker violated the conditions of the drug court program, he was sanctioned with jail time.

[9]     On January 31, 2018, Parker was placed on work release with an electronic ankle monitor after he committed perjury while testifying in another cause. Sometime thereafter, Parker cut his electronic ankle monitor, failed to participate in the drug court program, and absconded from the trial court's jurisdiction. On February 2, 2018, Parker failed to report to drug court, and on the same day, the trial court issued an arrest warrant for Parker. Parker remained a fugitive until May 3, 2018, when he was arrested.

[10] On May 9, 2018, the Howard County Drug Court Program filed its notice to terminate Parker's participation in the program. On May 14, 2018, the trial court entered a judgment of conviction for Parker's Level 3 felony dealing in a narcotic drug. On June 13, 2018, the trial court conducted a sentencing hearing. At the close of the evidence, the trial court sentenced Parker to serve a sixteen-year term in the Department of Correction. In the sentencing order, the trial court held that Parker's "jail time credit" was "in the sum of 357 actual days or 476 credit days." (Appellant's App. Vol. II, p. 60).

[11] Parker now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

## I. *Credit Time*

[12] Parker asserts that the trial court erred when it calculated his pretrial credit time. As our Supreme Court has noted, there are two types of credit that must be calculated: "(1) the credit toward the sentence a prisoner receives for time actually served, and (2) the additional credit a prisoner receives for good behavior and educational attainment." *Purcell v. State*, 721 N.E.2d 220, 222 (Ind. 1999). Credit time is a matter of statutory right, and trial courts do not have discretion in awarding or denying such credit. *Harding v. State*, 27 N.E.3d 330, 331-32 (Ind. Ct. App. 2015).

[13] Consistent with the sentencing order, the Abstract of Judgment read that Parker was entitled to receive accrued time of 357 days and good time credit of 119 days, totaling 476 days of credit time. On appeal, Parker contends that his

actual time served from the date of his arrest, October 12, 2016, to his release date, October 5, 2018, was 358 days instead of 357 days. The record shows that Parker was arrested on October 12, 2016, for the instant drug offense. On October 4, 2017, the trial court conducted Parker's guilty plea hearing, but Parker was released to the Howard Drug Court Program the following day, October 5, 2017. The State agrees that Parker is due one additional day of credit. Also, Parker contends that he was entitled to accrued time and good time credit when he was detained on May 3, 2018, up until his sentencing hearing on June 13, 2018. The State does not dispute that Parker deserves accrued time and good time credit during that period.

[14] Based on the foregoing, and consistent with this opinion, we remand to the trial court for the recalculation of Parker's credit time.

## II. *Credit Time during the Drug Court Program*

[15] Parker additionally argues that he was entitled to receive credit time during his participation in the drug court program and for any time he was incarcerated for violating the terms of the drug court program. The State contests Parker's claim that he enjoyed a statutory entitlement to credit time during his participation in a drug court program.

[16] "Because pre-sentence jail time credit is a matter of statutory right, trial courts generally do not have discretion in awarding or denying such credit." *Molden v. State*, 750 N.E.2d 448, 449 (Ind. Ct. App. 2001). "However, those sentencing decisions not mandated by statute are within the discretion of the trial court and

will be reversed only upon a showing of abuse of that discretion." *Id.* An abuse of discretion occurs if the decision is "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Anglemyer v. State*, 868 N.E.2d 482, 490, (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (citation omitted).

[17] A person who is imprisoned and awaiting trial or sentencing for a crime other than a Level 6 felony or misdemeanor is initially assigned to Class B. I.C. § 35-50-6-4(b)(2). Such a person earns one day of good time credit for every three days the person is confined awaiting trial or sentencing. I.C. § 35-50-6-3.1(c). We note that Indiana Code chapter 33-23-16, concerning drug court programs, is *silent* as to whether a drug court participant is entitled to credit time.

[18] In resolving this issue, we find *Meadows v. State*, 2 N.E.3d 788 (Ind. Ct. App. 2014), instructive. In that case, Meadows challenged the trial court's denial of his request for credit time for time he spent on electronic monitoring as part of a drug court program. *Id.* at 790. Meadows admitted to violating the conditions of his drug court agreement but argued the time he spent on electronic monitoring should count against his imposed sentence. *Id.* at 791. This court reasoned that statutes governing electronic monitoring as a condition of probation were inapplicable to a person who voluntarily participated in a drug court program. *Id.* at 792. Further, credit time statutes that apply to persons convicted or sentenced were inapplicable since Meadows was neither convicted of a crime nor sentenced at the time he participated in electronic monitoring. *Id.* Ultimately, this court decided it was within the trial court's discretion to

award or deny credit time spent on electronic monitoring while participating in a deferral program. *Id*. at 794.

[19] Parker argues that we should "reconsider [our] reasoning" in *Meadows*, and he contends that "to say that [he] was not [] awaiting sentencing [] is ignoring a reality that is used to underpin compliance in [d]rug [c]ourt." (Appellant's Br. pp. 11-12). We decline Parker's invitation.

[20] In exchange for his participation in the drug court program under Indiana Code section 33-23-16-14, Parker pleaded guilty to Level 3 felony dealing in a narcotic drug. At the time, the trial court did not enter a judgment of conviction or sentence. We note that Indiana Code chapter 33-23-16 does not provide for the application of credit time. Therefore, with no mandate in place with regard to the grant or denial of credit time in this instance, the trial court is free to exercise its discretion. *See Molden*, 750 N.E.2d at 449.

[21] In *Meadows*, we found that if we were to award offenders credit for time spent in diversion programs prior to sentencing, it would diminish the reward for completing the program and ultimately be rewarding offenders for their failure. *Meadows*, 2 N.E.3d at 793. Had Parker successfully completed the drug program, his Level 3 felony drug charge would have been dropped. *See Meadows,* 2 N.E.3d at 793 (holding that drug court deferral program provides an opportunity for those qualified to avoid conviction and sentence, but only if they comply with the conditions of the program.) Thus, Parker was not eligible to earn credit time while he was participating in the drug court program; he was

only eligible to begin earning credit for time served once his participation in the program was terminated.

[22] Further, Parker argues that he was entitled to earn credit time during the times he was sanctioned with jail time after he violated the conditions of the drug court program. By virtue of his status as a participant in a deferral program, Parker was not awaiting trial or sentencing for his drug charge during the time that he was in the drug court program. Rather, he was temporarily exempt during this time from the consequences of his charge. Therefore, when Parker was incarcerated during the times he violated the drug court program, his period of incarceration was not a fulfillment of any penal consequences to his charge, but it was a fulfillment of the requirements of the drug court program, which, if finished successfully, would result in a complete dismissal of the charge. Similarly, we conclude that the trial court did not abuse its discretion in awarding credit time during the time Parker was imprisoned for not complying with the drug court program.

[23] In sum, we conclude that the trial court did not abuse its discretion in not awarding Parker credit time during Parker's participation in the drug court program, or credit time for any time he was incarcerated for violating the terms of the drug court program.

### III. *Inappropriate Sentence*

[24] Parker claims that his sixteen-year sentence is inappropriate in light of the nature of the offense and his character. Indiana Appellate Rule 7(B) empowers

us to independently review and revise sentences authorized by statute if, after due consideration, we find the trial court's decision inappropriate in light of the nature of the offense and the character of the offender. *Reid v. State*, 876 N.E.2d 1114, 1116 (Ind. 2007). The "nature of offense" compares the defendant's actions with the required showing to sustain a conviction under the charged offense, while the "character of the offender" permits a broader consideration of the defendant's character. *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008); *Douglas v. State*, 878 N.E.2d 873, 881 (Ind. Ct. App. 2007). An appellant bears the burden of showing that both prongs of the inquiry favor a revision of his sentence. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). Whether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other considerations that come to light in a given case. *Cardwell*, 895 N.E.2d at 1224. Our court focuses on "the length of the aggregate sentence and how it is to be served." *Id.*

[25] The advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed. *Abbott v. State*, 961 N.E.2d 1016, 1019 (Ind. 2012). For his Level 3 felony dealing in a narcotic drug, Parker faced a sentencing range of three to sixteen years, with the advisory sentence being nine. Parker was ordered to serve the maximum sentence of sixteen years. I.C. § 35-50-2-5.

[26] We first examine the nature of Parker's offense. After previously selling drugs to a confidential informant, Parker was willing to do it again. On October 12,

2016, Parker agreed to sell 4 grams of heroin and 3.5 grams of cocaine to a confidential informant. Not only was Parker armed with a .38 caliber handgun during the drug transaction, that gun had previously been reported as stolen.

[27] When considering the character of the offender, one relevant fact is the defendant's criminal history. *Johnson v. State*, 986 N.E.2d 852, 857 (Ind. Ct. App. 2013). The significance of a criminal history varies based on the gravity, nature, and number of prior offenses in relation to the current offense. *Id*.

[28] At the time of his sentencing, Parker was twenty-four years old. As a juvenile, Parker was arrested, but not adjudicated as a delinquent, for receiving stolen property. As an adult, in 2012, Parker was arrested for carrying a false identification card. In 2014, Parker was charged with four misdemeanor drug offenses in Pennsylvania and was ordered to complete probation. In 2016, Parker was arrested for carrying a handgun without a license and false informing, however, those charges were later dropped.

[29] Also, we find that Parker's substance abuse reflects poorly on his character. In the presentencing report, Parker reported that he began consuming alcohol at age fourteen. Parker additionally indicated that from age fourteen until age twenty-four, he had used the following "illegal substances: hash, marijuana, spice, [] ecstasy, methamphetamine, amphetamine, codeine, morphine, heroin, oxycontin, opium, Xanax, Lortab, Klonopin, Norco, Suboxone and Adderall." (Appellant's App. Conf. Br. p. 13).

[30] Most significantly, Parker was given an extraordinary chance to have his Level 3 felony dealing in a narcotic drug charge dismissed had he successfully completed the drug court program. Instead of taking part in the program, Parker violated the conditions and was sanctioned twice with jail time. Sometime in February 2018, Parker fled the state, abandoning his responsibilities in the drug court program. Here, Parker has not convinced us that his sixteen-year sentence is inappropriate in light of the nature of the offense, and his character.

## CONCLUSION

[31] In sum, we hold that the trial court did not abuse its discretion by not awarding Parker credit time during his participation in the drug court program and during the time he was incarcerated for violating the terms of the program. Also, we find that Parker's sentence is not inappropriate in light of the nature of the offense and his character. However, consistent with this opinion, we remand to the trial court for the recalculation of Parker's credit time.

[32] Affirmed but remanded with instructions.

[33] Vaidik, C. J. and Kirsch, J. concur