## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 21 2021, 8:36 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Robert P. Magrath
Alcorn Sage Schwartz & Magrath
Madison, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Brandyn L. Arnold
Angela Sanchez
Myriam Serrano-Colon
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Ace H. Holstein,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

January 21, 2021

Court of Appeals Cause No.
20A-CR-1610

Appeal from the Jennings Circuit Court

The Honorable Jon W. Webster, Judge

Trial Court Cause No. 40C01-1906-F5-33

**Riley, Judge.**

# STATEMENT OF THE CASE

[1] Appellant-Defendant, Ace Holstein (Holstein), appeals his sentence following his guilty plea to child solicitation, a Level 5 felony, Ind. Code § 35-42-4-6(c).

[2] We affirm.

# ISSUE

[3] Holstein presents a single issue on appeal, which we restate as: Whether Holstein's sentence is inappropriate in light of the nature of the offense and his character.

# FACTS AND PROCEDURAL HISTORY

[4] Holstein was the best friend to Z.C.'s deceased brother. Z.C. had known Holstein since she was six years old and Holstein acted like a "big brother" toward Z.C. who continued to stay in contact with Z.C. even after her brother died. (Transcript Vol. II, p. 10). In June 2019, Holstein was twenty-three years old and Z.C. was fifteen years old. Holstein messaged Z.C. using Facebook Messenger and made sexual advances to her. When Z.C. responded that she was only fifteen years old, Holstein replied, "I know[.] [K]eep that shit between us." (Appellant's App. Vol. II, p.13). Holstein then told Z.C. that he had felt attracted to her ever since "that chest filled out and that ass got phat [sic]." (Appellant's App. Vol. II, p. 14). Holstein asked Z.C. to give him the chance to show her "what getting real dick fills [sic] like." (Appellant's App. Vol. II, p. 14). Z.C. rebuffed Holstein's sexual advances and told him she regarded him as her brother. That did not deter Holstein; instead, Holstein replied "And I

wouldent treat u any diff u could be my step sister and id try to get that ass atleast once." (Appellant's App. Vol. II, p. 14) (sic throughout). Holstein also expressed sexual interest in Z.C.'s best friend and he asked whether her best friend was a virgin. Holstein also requested to see Z.C.'s chest or her best friend's chest. Z.C. refused and she told him he sounded crazy. Z.C. again reminded Holstein that she was fifteen years old.

[5] Despite Z.C.'s repeated refusals, Holstein continued his efforts to sway her into having sexual intercourse with him. Holstein claimed that Z.C. would not regret it and that he would "make sure it was the best time of [her] life." (Appellant's App. Vol. II, p. 15). Z.C. protested that Holstein had never acted like this before, and he replied that she was older now and he hoped that she would not tell her mother. Holstein added that Z.C. should not feel weird because they have known each other since she was a child, and he in fact suggested that Z.C. should feel comfortable with his advances. Holstein also asked Z.C. if she was a virgin, and when she stated that she was not, he wrote back and stated that he was pleased since he does not "do virgins." (Appellant's App. Vol. II, p. 15). Eventually, Z.C. broke off the conversation with Holstein by telling him that he was "disrespectful as fuck" and a "fucking creep" especially because he had known her since she was a child and that he was the best friend to her "dead brother." (Appellant's App. Vol. II, p. 15). Thereafter, Z.C. reported the matter to her mother, and Z.C.'s mother contacted the police.

On June 27, 2019, the State filed an Information, charging Holstein with Level 5 felony child solicitation.  On July 21, 2020, pursuant to a plea agreement, Holstein pleaded guilty.  The same day, the trial court sentenced Holstein to five years in the Department of Correction with one year suspended to probation.

Holstein now appeals.  Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

Holstein claims that his five-year sentence is inappropriate in light of the nature of the offense and his character.  Indiana Appellate Rule 7(B) empowers us to independently review and revise sentences authorized by statute if, after due consideration, we find the trial court's decision inappropriate in light of the nature of the offense and the character of the offender.  *Reid v. State*, 876 N.E.2d 1114, 1116 (Ind. 2007).  The "nature of the offense" compares the defendant's actions with the required showing to sustain a conviction under the charged offense, while the "character of the offender" permits a broader consideration of the defendant's character.  *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008); *Douglas v. State*, 878 N.E.2d 873, 881 (Ind. Ct. App. 2007).  An appellant bears the burden of showing, after consideration of both prongs, that the sentence is inappropriate.  *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).  Whether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other considerations that come to light in a given case.

*Cardwell*, 895 N.E.2d at 1224. Our court focuses on "the length of the aggregate sentence and how it is to be served." *Id.*

[9] The advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed. *Abbott v. State*, 961 N.E.2d 1016, 1019 (Ind. 2012*).* For his Level 5 felony child solicitation, Holstein faced a sentencing range of one to six years, with the advisory sentence being three years. I.C. § 35-50-2-6(b). Holstein was sentenced to five years.

[10] We first examine the nature of Holstein's offense. The record shows that Holstein had known Z.C. since she was little and was the best friend to Z.C.'s brother. After Z.C.'s brother passed away, Holstein used his longstanding connection to try and lure Z.C. into having sexual intercourse with him. Holstein admitted that he knew Z.C. was fifteen years old and he hoped that Z.C. would be discreet and not report him to her mother. Despite Z.C.'s multiple refusals and knowing that she was underage, Holstein continually tried to persuade Z.C. into having sexual intercourse. Holstein claims that because his crime was not perpetuated by violence and there was no evidence that his actions had any "permanent effect" on Z.C., his sentence is inappropriate. (Appellant's Br. p. 10). Contrary to his claims, at the sentencing hearing, Z.C.'s mother testified that Z.C. no longer feels like she knows who she can trust. (Tr. Vol. II, p. 14).

[11] When considering the character of the offender, one relevant fact is the defendant's criminal history. *Rutherford v. State*, 866 N.E.2d 867, 874 (Ind. Ct.

App. 2007). The significance of a criminal history in assessing a defendant's character varies based on the gravity, nature, and number of prior offenses in relation to the current offense. *Id.* While a record of arrests may not be used as evidence of criminal history, it can be "relevant to the trial court's assessment of the defendant's character in terms of the risk that he will commit another crime." *Cotto v. State*, 829 N.E.2d 520, 526 (Ind. 2005).

[12] Holstein's juvenile criminal history involves two prior adjudications for burglary and theft. As an adult, in 2014, Holstein was convicted of inappropriate communication with a child using a computer network. In 2016, he was convicted of resisting law enforcement and battery resulting in bodily injury. In 2017, he was charged with battery. Finally, in 2019, between February and April, Holstein was convicted of intimidation, harassment by threat, possession of hashish oil, possession of paraphernalia, resisting law enforcement, and invasion of privacy. Further, we note that when Holstein was given the opportunity to serve his sentence on probation, he violated the conditions of his probation three times in two different cases and he also violated a protective order against an ex-girlfriend.

[13] Holstein's substance abuse also reflects poorly on his character. In the presentencing investigation report, Holstein stated that at the age of twelve, he smoked marijuana daily and stopped when he was incarcerated for the instant offense. Holstein also claimed that when he was fourteen years old, he began using methamphetamine daily and he stopped when he was jailed for the instant offense. Holstein posits that the trial court should have recognized his

ten-year drug addiction as a mitigating factor, and he is requesting a reduction of his sentence because he was aware of his drug problem and he was willing to receive treatment. This court has recognized that a history of substance abuse may be a mitigating circumstance; however, when a defendant is aware of the problem but has not taken appropriate steps to treat it, the trial court can properly reject substance abuse as a mitigating circumstance. *Hape v. State*, 903 N.E.2d 977, 1002 (Ind. Ct. App. 2009). Holstein failed to voluntarily seek treatment for his drug addiction, which he claims has been an issue for about a decade, despite having opportunities for rehabilitation while in jail or on probation.

[14] In light of the foregoing, we decline to find that Holstein five-year sentence is inappropriate in light of the nature of the offense and his character.

# CONCLUSION

[15] In sum, we conclude that Holstein's sentence is not inappropriate in light of the nature of the offense and his character.

[16] Affirmed.

[17] Najam, J. and Crone, J. concur